AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Galaxy On5 Model SM-G550T1
Serial No. 354151085539321

Case No. **17MJ3802**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of controlled substances and Conspiracy to do the same |

The application is based on these facts:
See Affidavit of Special Agent Jose Diego, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jose Diego, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/11/17

City and state: San Diego, CA

*Judge's signature*

Hon. Jan M. Adler, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Jose Diego, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices (collectively **Target Devices**):

    a. Black colored Samsung Galaxy On5 – Model SM-G550T1
       Serial No. 354151085539321
       (**Target Device #1**);

    b. White colored Alcatel One Touch – Model 7042A
       Serial No. 865867022864371
       (**Target Device #2**)

as described in Attachment A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963. This search supports an investigation and prosecution of Kimberly CAMACHO (CAMACHO) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Devices** were seized from CAMACHO on August 11, 2017 at the time of arrest. CAMACHO was charged along with her co-defendant, Marcos Tapia-Montes, with importation of 39.32 kilograms of Methamphetamine, 2.72 kilograms of Heroin, and 1.12 kilograms of Cocaine in the Southern District of California. The **Target Devices** are currently in the possession of The Department of Homeland Security, Homeland Security Investigations, Deputy Special Agent in Charge (DSAC) San Diego, 2255 Niels Bohr Court, San Diego, CA 92154 (Evidence Vault).

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B-1 and B-2.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent for the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and am assigned to the San Ysidro Narcotics Group V. I have been employed by HSI since June 2016. In July 2016, I attended the Federal Law Enforcement Training Center (FLETC) in relation to my employment as an HSI Special Agent. During the course of my formalized training at FLETC, I learned the fundamentals of how to conduct criminal investigations. This included, but was not limited to, the gathering of evidence, preservation of a crime scene, and the use of electronic evidence, all in relation to violations of the United Sates Code. Previously I was employed in the following Federal Law Enforcement positions, Enforcement and Removal Operations (ERO) as an Officer and Agent from December 2012 through June 2016, Customs and Border Protection (CBP) as an Officer from October 2008 through December 2012, and the United States Border Patrol as an Agent from December 2007 through August 2008.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

h. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and

3

contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating narcotics cases that searches of cellular/mobile telephones yields evidence:

    a.     tending to indicate efforts to import Methamphetamine, Heroin, and Cocaine or some other federally controlled substances from Mexico into the United States;

    b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of Methamphetamine, Heroin, and Cocaine or some other federally controlled substances from Mexico into the United States;

    c.     tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, Heroin, and Cocaine or some other federally controlled substances from Mexico into the United States;

    d.     tending to identify travel to or presence at locations involved in the importation of Methamphetamine, Heroin, and Cocaine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.     tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

### Investigation Overview

8. On August 11, 2017, at approximately 2:38 a.m., CAMACHO entered the United States from the Republic of Mexico via the vehicle lanes of the San Ysidro Port of Entry (POE). CAMACHO was the registered owner of the vehicle and was traveling as the passenger.[1] A Customs and Border Protection Officer (CBPO) conducted an inspection of the vehicle and discovered a brick-size package concealed within the dashboard. The driver and CAMACHO were escorted to the Security Office. A pat-down of CAMACHO was conducted, and two (2) cellphones, a black Samsung and white Alcatel, were found in CAMACHO's possession—**Target Device #1** and **Target Device #2**, respectively. The Z-Portal (x-ray machine) scanned the vehicle revealing anomalies in the dashboard and rear quarter panel areas.

9. A CBPO examined the vehicle more thoroughly and discovered a compartment built within the passenger side rear quarter panel area of the vehicle. A total of forty-eight (48) packages were removed from the vehicle. A CBPO noticed the packages were wrapped differently and not consistent with each other. A CBPO tested all the packages, the packages field-tested positive for the indication of Methamphetamine, Heroin, Cocaine, and the non-controlled substances of Dipyrone and Noscapine.

10. A total of forty (40) packages contained a clear crystal-like substance which tested positive for the indication of Methamphetamine, a Scheduled II Controlled Substance, with an approximate weight of 39.32 kilograms (86.50 pounds). A total of two (2) packages contained a brown powder-like substance which tested positive for the indication of Heroin, a Scheduled I Controlled Substance, with an approximate weight of 1.56 kilograms (3.43 pounds). A total of one (1) package contained a white

---

[1] Her co-defendant was driving the vehicle at the time of their crossing from Mexico into the United States.

5

powder-like substance which tested positive for Heroin, a Scheduled I Controlled Substance, with an approximate weight of 1.16 kilograms (2.55 pounds). A total of one (1) package contained a white powder-like substance which tested positive for Cocaine, a Scheduled II Controlled Substance, with an approximate weight of 1.12 kilograms (2.46 pounds). A total of three (3) packages contained Dipyrone with an approximate weight of 3.52 kilograms (7.74 pounds) and one (1) package contained Noscapine with an approximate weight of 1.20 kilograms (2.64 pounds), both are non-controlled substances.

11. CAMACHO was arrested and transported to the Metropolitan Correctional Center in San Diego, California. Incident to the arrest of CAMACHO, the **Target Devices** were seized by CBPOs from her person.

12. Based upon my experience and investigation in this case, I believe that CAMACHO and her co-defendant, as well as other persons as yet unknown, were involved in an on-going conspiracy to import Methamphetamine, Heroin, and Cocaine, as well as other federally controlled substances into the United States. Based on my experience investigating narcotics trafficking organizations and their use of cellular/mobile telephones, I also believe that CAMACHO may have used the **Target Devices** to coordinate with co-conspirators regarding the importation and delivery of the Methamphetamine, Heroin, and Cocaine and to otherwise further this conspiracy both inside and outside of the United States.

13. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of CAMACHO, such as telephone numbers, made and

received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Devices**.

14. Finally, drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports probable cause that CAMACHO began working with her drug trafficking coconspirators as early as Friday, February 10, 2017. This is based upon a review of TECS records, the load vehicle and CAMACHO's border crossing histories, and the load vehicle's registration records. Therefore, I request permission to search the **Target Devices** for items listed in Attachments B-1 and B-2 beginning on February 10, 2017 up to and including August 11, 2017.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the

device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

18. Based on all of the facts and circumstances described above, there is probable cause to conclude that CAMACHO used the **Target Devices** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

19. Because the **Target Devices** were promptly seized during the investigation of CAMACHO's trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by CAMACHO continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from February 10, 2017 up to and including August 11, 2017.

20. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jose Diego
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 11th day of October, 2017.

The Honorable ~~Nita L. Stormes~~ JAN M. ADLER
United States Magistrate Judge